## DAVID RODMAN v. DANIEL NATHAN.

*Replevin—Rights of parties to a voluntary assignment—General and special ownership—Contradictory verdict.*

An assignee for the benefit of creditors is the general owner of the assigned goods until his trust is fully performed, and then the resulting trust restores to the assignor the general ownership in what is left. But during the trust, the assignor has no lien upon the goods, or special property in them.

A debtor, who had made an assignment, afterward resumed control of the goods and the assignee brought replevin for them. *Held* that losses by the assignee's negligence could not be charged on him in this or in any suit at law.

An accounting in respect to a trust can present questions of losses caused by the trustee's negligence only in a court of equity.

A finding in replevin that plaintiff has the general property but that defendant did not unlawfully detain the goods is contradictory and cannot sustain a judgment in a case where it is impossible that a special property should co-exist with the general ownership.

Error to Alpena. Submitted Jan. 27. Decided April 13.

REPLEVIN. Plaintiff brings error. Reversed.

*Turnbull & McDonald* for plaintiff in error. An assignment for the benefit of creditors divests the assignor of his entire interest: Burrell on Assignments 399; *Briggs v. Palmer* 20 Barb. 392; *Pettit v. Johnson* 15 Ark. 55; while

the deed of trust is operative the trustee holds the whole title: *Steevens v. Earles* 25 Mich. 44.

*Kelley & Clayberg* for defendant in error.

COOLEY, J. In December, 1877, Nathan executed and delivered to Rodman as trustee a general assignment in trust for his creditors. The property assigned consisted of a stock of merchandise, and Rodman proceeded to dispose of it in the store where it was when the assignment was made, retaining Nathan as his clerk. In August, 1878, Rodman undertook to discharge Nathan from his service, whereupon the latter assumed the right to control, and declared the assignment at an end. As Nathan then had physical possession of the goods, Rodman replevied them, and they were appraised at $2824.13.

On the trial of the replevin suit, the questions litigated appear to have been, whether Rodman as assignee had honestly and fully discharged his duty as trustee under the assignment, or whether he had been negligent and losses had been suffered by the trust fund in consequence. The inquiry thus assumed as wide a range as it would have done had the case been a suit in equity for an accounting. There was no showing that all the debts had been paid. The circuit judge in charging the jury instructed them in substance that the assignment made the assignee the general owner of the goods until the time had arrived when he ought to account, but that if they should find that the debts, legal charges and disbursements had been paid, and that there still remained in the assignee's hands moneys and property derived from the assignment, they should then find that the assignor had a special interest in the property to the amount so found, with interest from the time when the accounting should have taken place.

This instruction seems to have been given on the supposition that the case was within Comp. L. 1871, § 6754, which provides that " when either of the parties to an action of replevin, at the time of the commencement of the suit,

shall have only a lien upon, or special property or part owner-ship in, the goods and chattels described in the writ, and is not the general owner thereof, that fact may be proved on the trial, or on the assessment of value, or on the assessment of damages, in all cases arising under this chapter; and the finding of the jury, or court, as the case may be, shall be according to such fact, and the court shall thereupon render such judgment as shall be just between the parties."

It was a mistake to suppose this statute had any applica-tion to the case. The assignor had no lien on the property assigned, and neither did he have any special property therein. The assignee was general owner until the trust had been fully performed. When the trust was discharged the assignor would become entitled to have any surplus restored to him, not because of any special property, but because the resulting trust then restored to him his former rights as general owner. But in a suit at law questions of negligence in the assignee and of consequent loss could not be gone into with a view to punish the assignee therefor by charging losses upon him: an accounting in respect to a trust which can present such questions, can only be had in a court of equity.

But the jury rendered a verdict which was not only not warranted by the charge but was inconsistent with itself. The verdict was that Rodman was general owner of the goods, but that Nathan had a special property therein to the amount of one thousand dollars. The court accepted this verdict, and gave judgment that Nathan recover the sum named. Of course if Rodman was general owner, he was such by virtue of the assignment, and because the trust under it was not yet discharged. Nathan under such circumstances could have only a wholly contingent and uncertain equitable right; a right to have a surplus returned to him if one remained after the debts and all expenses of the trust had been paid: he could have no present legal right whatever. A finding, therefore, that Rodman was general owner would be incon-sistent with any right of Nathan to recover anything, and a finding that Nathan was entitled to a certain sum would be equally inconsistent with the supposed continuance of Rod-

man's general ownership. Indeed we cannot understand this verdict unless we suppose the jury understood that if the assignee had in his hands property more than sufficient for the payment of the debts and charges, the assignor was entitled to a judgment for the surplus. But if he could be so entitled at any time before the trust was performed, he would be entitled the moment the trust was created: and we need only suggest this to show how erroneous is any such supposition.

The plaintiff claims judgment in his favor on the verdict; and if the finding of a general property in him stood alone, he would be entitled to it. But the verdict also finds that the defendant did not unlawfully detain the property; and in this contradictory finding one party is no more entitled to demand judgment than the other.

The judgment which was rendered in the circuit court must therefore be reversed with costs and a new trial awarded.

The other Justices concurred.